FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 18 2024 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

*ex rel.* [UNDER SEAL],

        Plaintiffs,

v.

[UNDER SEAL],

        Defendants.

---

Civ. Action No. CV 24-0373

*QUI TAM* COMPLAINT
FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)2
DEMAND FOR JURY TRIAL

KUO, M.J.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 18 2024 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *ex rel.*
Kareema Ta-She Whitfield,

Plaintiffs,

v.

WILLIAMSBURG CENTER FOR RENAL
DIALYSIS LLC D/B/A WILLIAMSBURG
DIALYSIS CENTER,
RENALLIANCE BILLING GROUP LLC
D/B/A RENALLIANCE GROUP, AND
GERIPRO DIALYSIS CONSULTANTS LLC

Defendants.

Civ. Action No. CV 24-0373

*QUI TAM* COMPLAINT
FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)2
DEMAND FOR JURY TRIAL

KUO, M.J.

1

## COMPLAINT

On behalf of the United States of America, the Relator Kareema Ta-She Whitfield files this *qui tam* Complaint against Defendants Williamsburg Center for Renal Dialysis LLC d/b/a Williamsburg Dialysis Center, RenAlliance Billing Group LLC d/b/a RenAlliance Group, and Geripro Dialysis Consultants LLC.

## INTRODUCTION

1. This is an action brought by Relator Kareema Ta-She Whitfield to recover treble damages and civil penalties on behalf of the United States of America ("Government") arising from unlawful schemes by Defendants Williamsburg Center for Renal Dialysis LLC d/b/a Williamsburg Dialysis Center, RenAlliance Billing Group LLC d/b/a RenAlliance Group, and Geripro Dialysis Consultants LLC (collectively: "Defendants") to obtain improper reimbursements from Medicare and other Government-funded health insurance plans.

2. Defendants knowingly submitted false claims for reimbursement for renal dialysis services provided to patients covered by Medicare and other Government-funded health plans.

3. Defendants' conduct alleged herein is in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq., as amended ("FCA").

## PARTIES

4. Defendant Williamsburg Center for Renal Dialysis LLC d/b/a Williamsburg Dialysis Center ("Williamsburg Dialysis") is a medical facility offering renal dialysis in Brooklyn, New York.

5. According to its website, it is located at 89 Bartlett Street, Brooklyn, NY 11206. Though the aforementioned website and the Relator's paystubs identify the defendant as "Williamsburg Dialysis Center", a search of the New York Division of Corporations business entity database reveals no such entity is registered to do business in the state of New of York under that name.

6. Upon information and belief, Williamsburg Dialysis is registered to do business in the State of New York as a domestic limited liability company under the name "Williamsburg Center for Renal Dialysis LLC".

7. Defendant RenAlliance Billing Group LLC d/b/a RenAlliance Group ("RenAlliance") provides consulting services to dialysis centers across the country.

8. According to its website, RenAlliance is located at 2486 Coney Island Avenue, Brooklyn, NY 11223. The aforementioned website identifies the defendant as "RenAlliance Group – A GERIPRO COMPANY". A search of the New York Division of Corporations business entity database reveals no entity is registered to do business in the state of New York under that precise name nor as "RenAlliance Group".

9. Upon information and belief, RenAlliance is registered to do business in the State of New York as a domestic limited liability company under the name "RenAlliance Billing Group LLC". According to the Relator, RenAlliance provides billing support to Williamsburg Dialysis.

10. Upon information and belief, RenAlliance is a subsidiary of Geripro Dialysis Consultants LLC ("Geripro").

11. Relator Kareema Ta-She Whitfield holds a degree in Doctor of Social Work and is a Licensed Master Social Worker. She worked for Williamsburg Dialysis between January and March of 2023. Relator is currently an Adjunct Professor of Social Work at Yeshiva University in Manhattan.

## JURISDICTION AND VENUE

12. Venue and jurisdiction are the same under the FCA. 31 U.S.C. § 3732. An action may be brought in any judicial district in which any defendant may be found or in which any proscribed act occurred. 31 U.S.C. § 3732(a).

3

13. The United States District Court for the Eastern District of New York has jurisdiction and venue for any Complaint brought in the matter because one or more defendants are located in this district and proscribed acts occurred in this district.

14. Relator is unaware that the allegations of wrongdoing in this Disclosure have been publicly disclosed, nor are the allegations herein based on any public disclosures which may exist.

15. Furthermore, Relator is an "original source" under the FCA as this voluntary disclosure precedes any public disclosures that may occur and the Relator's knowledge of the alleged wrongdoing is independent of, and materially adds to, any public disclosure that may have occurred.

16. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and/or a written disclosure of substantially all material evidence and material information in their possession contemporaneous with the filing of the Complaint. Relator complied with this provision by serving a pre-suit Disclosure Statement with attached exhibits upon the United States Attorney for the Eastern District of New York on or about December 30, 2023.

17. In further compliance with 31 U.S.C. §3730(b)(2), Relator shall, contemporaneously with the filing of this Complaint, serve copies of this Complaint upon the United States Attorney for the Eastern District of New York and on the Honorable Merrick Garland, Attorney General of the United States.

18. In further compliance with 31 U.S.C. § 3730(b)(2), this Complaint is being filed *in camera* and will remain under seal for a period of at least sixty days and shall not be served on the Defendants until the Court so orders.

## LEGAL FRAMEWORK

### A. The Federal False Claims Act

19. Originally enacted in 1863, Congress substantially amended the FCA in 1986. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud, against the United States.

20. Further clarifying amendments were adopted in May 2009 and March 2010. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval;" or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. 3729(a)(1)(A), (B), (G).

21. Any person found to violate these provisions is liable for a civil penalty of up to $11,000 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

22. Significantly, the FCA imposes liability where the conduct is merely "in reckless disregard of the truth or falsity of the information" and further clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. 3729(b)(1).

23. The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that — (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest,

5

and if the United States Government — (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

24. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery.

25. The complaint must be filed under seal without service on any Defendant.

26. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

B. Federally Funded Health Insurance Programs

1. **Medicare**

27. Medicare is a federally-funded health insurance program for the elderly and persons with certain disabilities, providing hospital insurance. Medicare covers doctor's visits, medication, durable medical equipment, and more for beneficiaries living with HIV. All Medicare prescription drug plans are legally required to cover HIV medications such as antiretrovirals. Costs for HIV treatment under Medicare include premiums, deductibles, copayments, and coinsurance for necessary services and medications.

28. Medicare payments come from the Medicare Trust Fund, which is funded primarily by payroll deductions taken from the United States work force through mandatory Social Security deductions.

29. Medicare is generally administered by the Centers for Medicare and Medicaid Services ("CMS"), which is an agency of the Department of Health and Human Services ("HHS"). CMS

establishes rules for the day-to-day administration of Medicare. CMS contracts with private companies to handle the day-to-day administration of Medicare.

30. CMS, through contractors, maintains and distributes fee schedules for the payment of physician and healthcare provider services. These schedules specify the amounts payable for defined types of medical services and procedures.

### 2. Medicaid

31. Medicaid is a state and federal assistance program to provide payment of medical expenses for low-income patients. Medicaid was created in 1965 in Title XIX of the Social Security Act. Funding for Medicaid is shared between the Federal Government and state programs that choose to participate in Medicaid.

32. At all relevant times to this matter, applicable Medicaid regulations relating to coverage for HIV medications have been substantially similar in all material respects to the applicable Medicare provisions detailed below.

### 3. Tricare

33. TRICARE is a federal program which provides civilian health benefits for military personnel, military retirees, and their families. TRICARE is administered by the Department of Defense and funded by the Federal Government. *See* 32 C.F.R. 199.17. At all relevant times to the matter, applicable TRICARE regulations relating to coverage of claims by providers and physicians have been substantially similar in all material respects to the applicable Medicare provisions described herein.

### 4. Federal Employees Health Benefit Plan ("FEHBP")

34. FEHBP provides health insurance coverage for nearly 8.7 million federal employees, retirees and their dependents. It is a collection of individual healthcare plans, including the Blue Cross and Blue Shield Association and the Government Employees Health Association. At all

7

relevant times to the matter, applicable FEHBP regulations relating to coverage of claims by providers and physicians have been substantially similar in all material respects to the applicable Medicare provisions described herein.

35. Medicare, Medicaid, TRICARE, FEHBP and other similar federally-funded programs are referred to collectively herein as "Government-funded health plans."

**C. Medicare and Medicaid Coverage of End-Stage Renal Disease**

36. End-Stage Renal Disease (ESRD) is a kidney impairment that is irreversible and permanent. Dialysis is a process for cleaning the blood and removing excess fluid artificially with special equipment when the kidneys have failed. People with ESRD require either a regular course of dialysis or kidney transplantation in order to live.

37. Given the high costs and absolute necessity of transplantation or dialysis for people with failed kidneys, Medicare provides health care coverage to qualifying individuals diagnosed with ESRD, regardless of age, including coverage for kidney transplantation, maintenance dialysis, and other health care needs.

38. The ESRD benefit was established by the Social Security Amendments of 1972 (Pub. L. 92–603). This benefit is not a separate program but allows qualifying individuals of any age to become Medicare beneficiaries and receive coverage.

39. Under the statute, individuals under 65 who are entitled to Medicare through the ESRD program, or individuals over age 65 who are diagnosed with ESRD while in Original Medicare, generally cannot enroll in Medicare Advantage.

40. The ESRD Amendments of 1978 (Pub. L. 95–292), amended title XVIII of the Social Security Act (the Act) by adding section 1881 of the Act. Section 1881(b)(1) of the Act further authorizes the Secretary of the Department of Health and Human Services (the Secretary) to prescribe additional requirements (known as conditions for coverage or "CfCs") that a facility

providing dialysis and transplantation services to dialysis patients must meet to qualify for Medicare payment.

41. Medicare pays for routine maintenance dialysis provided by Medicare-certified ESRD facilities, also known as dialysis facilities.

42. To gain certification, a government agency performs an on-site survey of the facility to determine if it meets the ESRD CfCs at 42 C.F.R. part 494.

43. If a survey indicates that a facility is in compliance with the conditions, and all other Federal requirements are met, CMS then certifies the facility as qualifying for Medicare payment. Medicare payment for outpatient maintenance dialysis is limited to facilities meeting these conditions.

44. The ESRD CfCs were first adopted in 1976 and comprehensively revised in 2008. There are approximately 6,737 Medicare-certified dialysis facilities in the United States, providing dialysis services and specialized care to people with ESRD.

45. In addition to Medicare, Medicaid provides coverage for some people with ESRD. Many individuals enrolled in Medicare may also qualify for full benefits under the Medicaid program on the basis of their income, receipt of Supplemental Security Income, being determined medically needy, or other eligibility categories under the State Plan.

46. In addition, low-income individuals enrolled in Medicare may qualify for the Medicare Savings Program under which the state's Medicaid program covers some or all, of the individual's Medicare premiums and, for some individuals, Medicare cost-sharing. Finally, some individuals who are not eligible for enrollment in Medicare may qualify for Medicaid.

47. According to data published by the United States Renal Data System (USRDS), Medicare is the predominant payer of ESRD services in the United States, covering (as primary or secondary payer) about 88 percent of the United States ESRD patients receiving hemodialysis in 2014.

48. Among those enrolled in Medicare on the basis of ESRD and receiving hemodialysis in 2015, CMS has determined 41 percent were enrolled in both Medicare and Medicaid (including full and partial duals). Among those enrolled in Medicare on the basis of ESRD under age 65, 51 percent were dual enrollees.

49. Of particular relevance to the present matter, among the CfCs for coverage of ESRD is the requirement that the ESRD facility must "develop and implement a written, individualized comprehensive plan of care that specifies the services necessary to address the patient's needs." 42 C.F.R. § 494.90.

50. The plan of care must be developed and signed by an "interdisciplinary team" that includes "at a minimum, the patient or patient's designee…a registered nurse, a physician treating the patient for ESRD, a social worker, and a dietitian. Id at § 494.80. The plan of care must be revised periodically depending on the condition of the patient.

51. The plan of care must be developed an implemented "within the latter of 30 calendar days after admission to the dialysis facility or 13 outpatient hemodialysis sessions." Id. at sec. 494.90(b)(2). If the patient is stable, the interdisciplinary team must reassess their plan of care after 90 days and then annually after that.

## COURSE OF CONDUCT

52. According to the Relator, defendants Williamsburg Dialysis and RenAlliance submit claims for payment from Government-funded health plans for ESRD services though they knowingly fail to meet all the CfCs specified in the regulations.

53. Specifically, defendants seek reimbursement for ESRD services though they know that the plans of care are not being developed by the interdisciplinary team as required by the regulations.

54. Defendants require members of the interdisciplinary team to falsely affirm, via a dated signature, that the team met to discuss and develop the patients' plans of care.

55. In fact, according to the Relator, at no point do the members of the interdisciplinary team actually meet to discuss, develop or implement the plans of care for the patients.

56. As a licensed social worker, the Relator's primary duty while employed by Williamsburg Dialysis was to advocate for the patients to make sure their health care needs are met and that they receive any aid for which they are eligible.

57. In addition, one of her assigned tasks was to get all the members of the interdisciplinary team—including the patient—to sign a sheet of paper indicating that they had met to discuss, develop and/or modify the patient's plan of care.

58. According to the Relator, since these joint meetings were not taking place, she had to obtain the patient's signature and then track down the other members of the team one-by-one to obtain their signatures.

59. In support of her allegation that Williamsburg Dialysis and RenAlliance are not complying with 42 C.F.R. § 494, the Relator states copies of the Interdisciplinary Plan of Care Signature Sheet falsely indicate that the members of the team meet to evaluate the patients and to develop and/or modify the patients' plan of care in compliance with the aforementioned regulation. As explained above, these signature sheets are false as such meetings do not regularly occur.

60. As a specific example, the members of an interdisciplinary team consisting of a physician, a nurse, a social worker, and the patient or patient's proxy signed an Interdisciplinary Plan of Care sheet falsely indicating that they met on February 28, 2023 to develop a plan of care for Patient A who was covered by a Government-funded health plan.[1] According to the Relator, no such

---

[1] Patient names and other identifying information are redacted in the exhibits and in the text of this Disclosure Statement out of an abundance of caution. Relator is in possession of the patient names and unredacted exhibits and will gladly turn them over to the Government investigators at their request.

11

meeting took place and, in any event, would have been late under the regulations as the 30-day deadline was February 16, 2023. Defendants then used the signed sheet to obtain reimbursement from the Government.

61. As another example, the members of an interdisciplinary team consisting of a physician, a nurse, a social worker, a dietician and the patient or patient's proxy signed an Interdisciplinary Plan of Care sheet falsely indicating that they met on February 28, 2023 to develop a plan of care for Patient B who was covered by a Government-funded health plan. According to the Relator, no such meeting took place and, in any event, would have been late under the regulations as the 30-day deadline was February 12, 2023. Defendants then used the signed sheet to obtain reimbursement from the Government.

62. As another example, the members of an interdisciplinary team consisting of a physician, a nurse, a social worker, a dietician and the patient or patient's proxy signed an Interdisciplinary Plan of Care sheet falsely indicating that they met on March 1, 2023 to develop a plan of care for Patient C who was covered by a Government-funded health plan. According to the Relator, no such meeting took place and, in any event, would have been late under the regulations as the 30-day deadline was February 27, 2023. Defendants then used the signed sheet to obtain reimbursement from the Government.

63. These examples are illustrative and not exhaustive of the defendants' fraudulent conduct.

64. According to the Relator, the members of the interdisciplinary team *never* met to discuss and develop the plan of care.

65. Instead, each team member would develop a portion of the plan care independently, without consulting with other team members for possible conflicts or other related issues.

66. The Relator was not comfortable with the wrongful conduct she witnessed and she was terminated as a result. This was in violation of the FCA's provision against retaliatory termination, 31 U.S.C. §3730(h).

## DEFENDANT'S IMPROPER CONDUCT CAUSED SUBSTANTIAL DAMAGE TO THE GOVERNMENT

67. Defendants violated the FCA by knowingly making false statements to obtain reimbursement from Government-funded health plans.

68. Through the schemes detailed above, Defendants damaged the Government and its taxpayers significantly by causing millions of dollars in false or fraudulent claims for reimbursement.

## CONCLUSION

69. Defendants caused the Government to incur substantial damages by presenting, making, using or causing to be presented, made or used thousands of False Claims to Government-funded health programs.

70. The False Claims resulted in remuneration unlawfully received by the Defendants. More specifically, Defendants violated numerous provisions of the FCA, including, but not limited to, the following: 31 U.S.C. § 3729(a)(1)(A); 31 U.S.C. § 3729(a)(1)(B); 31 U.S.C. § 3729(a)(1)(C); 31 U.S.C. § 3729(a)(1)(D); 31 U.S.C. § 3729(a)(1)(G); and 31 U.S.C. § 3730(h).

71. Failure to hold Defendants accountable for their unlawful conduct sets a dangerous precedent that Medicare and other Government-funded health plans are not serious about enforcing the rules promulgated concerning the conditions providers must meet to receive reimbursements.

72. In light of the foregoing, Defendants are liable to the United States for civil penalties and statutory damages.

## CLAIMS FOR RELIEF

### COUNT I
### False Claims Act: Presentation of False Claims
### 31 U.S.C. § 3729(a)(1)(A)

73. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

74. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants have "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval" in violation of 31 U.S.C. § 3729(a)(1).

75. As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015, and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

### COUNT II
### False Claims Act: Making or Using a False Record
### or Statement to Cause Claim to be Paid
### 31 U.S.C. § 3729(a)(1)(B)

76. Relator repeats and incorporates the allegations above as if fully contained herein.

77. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement – *i.e.*, the false certifications and representations made or caused to be made

14

by the Defendants – to get a false or fraudulent claim paid or approved by the Government" in violation of 31 U.S.C. § 3729(a)(2).

78. As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015, and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT III
### False Claims Act: Conspiracy to Commit a Violation
### 31 U.S.C. § 3729(a)(1)(C)

79. Relator repeats and incorporates the allegations above as if fully contained herein.

80. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants and its agents have "conspire[d] to commit a violation of subparagraph (A), (B), (D)…or (G)" in violation of 31 U.S.C. §3729(a)(1)(C).

81. As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015, and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT IV
### False Claims Act: Knowingly Delivers Less Than All of
### Government's Property in Defendants' Possession

15

31 U.S.C. §3729(a)(1)(D)

82. Relator repeats and incorporate the allegations above as if fully contained herein.

83. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants "ha[d] possession, custody, or control of property or money used, or to be used, by the Government and knowingly deliver[ed], or cause[d] to be delivered, less than all of that money or property" in violation of 31 U.S.C. §3729(a)(1)(D).

84. As a result of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015, and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT V
### False Claims Act: Knowingly Conceals or Improperly Avoids an Obligation to Pay Money to the Government
### 31 U.S.C. §3729(a)(1)(G)

85. Relator repeats and incorporates the allegations above as if fully contained herein.

86. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases and obligation to pay or transit money or property to the Government: in violation of 31 U.S.C. §3729(a)(1)(G).

87. As a result of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at

least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015, and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendants' unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT VI
### False Claims Act: Retaliatory Termination
### 31 U.S.C. §3730(h)

88. Relator repeats and incorporates the allegations above as if fully contained herein.

89. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the [relator] in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."

90. As a result of Defendants' acts, the relator has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

## PRAYERS FOR RELIEF

WHEREFORE, for each of these claims, the *qui tam* Plaintiff/Relator requests the following relief from each of the Defendants, jointly and severally:

a. Three times the amount of damages that the Government sustains because of the acts of Defendants;

b. A civil penalty of for each violation;

c. An award to the *qui tam* Plaintiff/Relator for collecting the civil penalties and damages;

d. Award of an amount for reasonable expenses necessarily incurred;

e. Award of the *qui tam* plaintiffs reasonable attorneys' fees and costs;

f. Interest; and

g. Such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby demand a trial by jury as to all issues.

January 17, 2024                                                              Respectfully Submitted:

William L. Hurlock
MUELLER LAW, LLC
363 Bloomfield Ave, 2-C
Montclair, NJ 07042
(973) 233-8290
william.hurlock@muellerlaw.com
ATTORNEYS FOR RELATOR

18